IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ELLA N. LIGGINS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. C2-04-502** |
| | : | |
| **AMERICAN ELECTRIC POWER** | : | **JUDGE ALGENON L. MARBLEY** |
| **COMPANY, INC.,** | : | **Magistrate Judge Abel** |
| | : | |
| **Defendant.** | : | |
| | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment. Defendant American Electric Power Company ("Defendant" or "AEP") terminated Plaintiff Ella N. Liggins ("Plaintiff" or "Liggins"). Plaintiff brought an employment discrimination suit alleging that Defendant fired her on account of her age. For the reasons stated below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

### II. BACKGROUND

In 1998, AEP recruited Liggins, at age 55, to its information technology ("IT") department. AEP subsequently promoted Liggins to a management position in which she oversaw twenty-three employees, thirty-two contractors, and a $10 million budget. By all accounts, AEP considered Liggins to be a model employee. In 2000, AEP merged with Central Southwest Power Company ("CSW"), precipitating a downsizing of AEP's IT department. Prior to the merger, AEP ran MMS software to manage its supply chain. By contrast, CWS ran

INDUS/PassPort software, which was incompatible with MMS.  Incident to the merger, AEP abandoned MMS in favor of INDUS/PassPort, rendering superfluous many of AEP's IT employees.

In 2002, AEP ordered Liggins to attend a briefing by company attorneys regarding the termination of dispensable employees.  Accounts of this meeting differ.  Liggins alleges that AEP's counsel implicitly instructed IT management to terminate employees above the age of 40.  By contrast, AEP insists that the purpose of the briefing was to tutor managers on the proper procedures for terminating employees.  Given the rash of dismissals accompanying the merger, AEP asserts that corporate attorneys were merely instructing management on how to limit AEP's liability.

Liggins further alleges that in late 2002, her supervisor Sharon Valvona ("Valvona") repeatedly insinuated that Liggins' age undermined her effectiveness.  Specifically, Valvona allegedly commented on Liggins' age, the age of her daughter, and her expected retirement date.  Liggins further contends that Valvona began to build a record of complaints against her to serve as a pretext for her subsequent dismissal.  As a result, Liggins complained to AEP's Human Resources Department of age discrimination.

In April 2003, AEP fired Liggins. Velda Otey ("Otey"), head of the IT department, conceded that Liggins was an excellent employee.  Otey lamented, however, that Liggins was a casualty of corporate downsizing that claimed over 80 employees in 2003.  Particularly grating to Liggins, AEP ostensibly replaced her with Bill Scholl ("Scholl"), whom Liggins considered incompetent and lazy.  At the time of her dismissal, Liggins was 59.  Scholl was 55.

Liggins brought an employment discrimination suit alleging that AEP fired her on

account of her age.  AEP moves for summary judgment.

### III.  STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  But "summary judgment will not lie if the. . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party.  *See Anderson*, 477 U.S. at 248.  Therefore, the movant has the burden of establishing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickerel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).  But the non-moving party "may not rest upon its mere allegations."  Fed. R. Civ. P.56(e); *see Celotex*, 477 U.S. at 324*; Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).  The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

### IV.  ANALYSIS

Plaintiff brings an employment discrimination suit under the ADEA and Ohio law,[1]

---

[1]Under Ohio law, "the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis."  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998) (citing *Barker v. Scovill, Inc.*, 451 N.E.2d 807, 808 (1983)).

alleging that Defendant fired her on account of her age.[2]  To survive summary judgment, Plaintiff must present either direct or circumstantial evidence of age discrimination.  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).  Since Plaintiff admittedly proffers only circumstantial evidence, the familiar burden-shifting framework that the Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs Plaintiff's claim.

Pursuant to the *McDonnell Douglas* paradigm, Plaintiff must first establish a prima facie case of age discrimination.  *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).  To do so, Plaintiff must proffer sufficient circumstantial evidence to "create an inference that an employment decision was based on an illegal discriminatory criterion." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).  If Plaintiff establishes a prima facie case, the burden of production shifts to Defendant to articulate a non-discriminatory reason for its adverse employment action.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 149 (2000).  If Defendant is successful, the *McDonnell Douglas* paradigm shifts the burden of production back to Plaintiff to show, by a preponderance of the evidence, that Defendant's professed reason was merely a pretext to mask a discriminatory animus.  *See Manzer*, 29 F.3d at 1083.

---

[2]Plaintiff's Complaint also alleges that Defendant terminated her on account of her race, gender, and for complaining of discrimination, in violation of Title VII, 42 U.S.C. § 1981, and the Fourteenth Amendment.  The Amended Complaint further alleges breach of contract.  But Plaintiff does not proffer any evidence, either in Plaintiff's Opposition to Summary Judgment or in Plaintiff's accompanying affidavit, to support these allegations.  Plaintiff does not even respond to Defendant's Motion for Summary Judgment attacking these claims.  Plaintiff fails to mention these claims in any pleading other than the Complaint.  As Plaintiff implicitly concedes that there is no genuine issue of fact, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to these claims.  As such, only Plaintiff's age discrimination claim merits detailed consideration.

## A.  PRIMA FACIE CASE

To establish a prima facie case of age discrimination, Plaintiff must show that: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) Defendant replaced her with a significantly younger employee.  *Tuttle v. Metro. Gov. of Nashville*, 474 F.3d 307, 318 (6th Cir. 2007).  It is undisputed that Plaintiff was within the protected class, that Defendant terminated her, and that she was well-qualified for the position.  But the parties dispute the fourth element.  Defendant contends that it did not replace Plaintiff, but eliminated her position pursuant to a reduction-in-force ("RIF").  Alternatively, Defendant argues that Plaintiff's ostensible replacement was not significantly younger than her, which is fatal to her claim under the Sixth Circuit's age discrimination jurisprudence.

### 1.  Reduction in Force

The parties dispute whether Defendant replaced Plaintiff or merely eliminated her position as part of a RIF.  The Sixth Circuit has established that "an employee is replaced only when another employee is hired or reassigned to perform the plaintiff's duties."  *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003).  However, "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties."  *Id.*  Similarly, "spreading the former duties of a terminated employee among the remaining employees does not constitute replacement" for the purposes of an employment discrimination suit.  *Godfredson v. Hess & Clark*, 173 F.3d 365, 372-73 (6th Cir. 1999).

Defendant contends that it assigned Scholl, Plaintiff's ostensible replacement, duties outside the scope of Plaintiff's former position.  Specifically, Defendant tasked Scholl to plan for

the INDUS/PassPort Supply Chain and Hub and supervise Materials Management. According to

Defendant, Plaintiff had no comparable responsibility. As such, Defendant concludes that it did

not replace Plaintiff under Sixth Circuit law, but eliminated her position as part of a RIF. *See*

*Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).

Although it is undisputed that Defendant terminated Plaintiff amid corporate downsizing

and reorganization, Plaintiff counters that her position remained the same. As such, Plaintiff

avers that Scholl replaced her in substance if not in form. The Sixth Circuit cautioned that "an

employer [can] not avoid liability by changing the job title or by making minor changes to a job

indicative of an attempt to avoid liability." *Barnes v. GenCorp Inc.*, 896 F.2d 1457,1465 n.10

(6th Cir. 1990). Based upon Defendant's description of Scholl's duties, Plaintiff affirmed that,

apart from cosmetic changes, her former position remained effectively unchanged:

> Q: Okay. So in terms of Bill Scholl getting your position, that's not exactly
> accurate - - isn't it - - isn't it correct to say that he received a position after
> the reorganization and you did not, but that it wasn't necessarily your
> position.
> A: It was my position. It says supply chain applications.
> Q: Okay. You don't have any personal knowledge, though, of what job
> duties were included in that after the reorganization, do you?
> A: According to what [AEP] told me, according to what [AEP] told EEO, his
> duties were essentially the same as mine.
> Q: So is it your belief that he assumed some of the duties that you did before?
> A: He assumed **all** of the duties I had. . . .

(Liggins Dep. 263:12-264:4, Apr. 14, 2007) (emphasis added).

Plaintiff reiterated in her affidavit that, based on her supervisor's description of Scholl's

duties, she occupied essentially the same position prior to termination. The only difference is

that Defendant re-labeled the IT organizational chart. Construing the facts in a light most

favorable to Plaintiff, Defendant's changes appear more cosmetic than substantive. Therefore,

under Sixth Circuit law, Scholl effectively replaced Plaintiff as head of the supply chain branch of the IT department.

### 2.  Significantly Younger

Defendant contends that the four-year age difference between Plaintiff and her replacement is insignificant.  To establish a prima facie case of age discrimination, Plaintiff's replacement must be "significantly younger."  *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 728 (6th Cir. 2007); *O'Connor*, 517 U.S. at 312.  The Sixth Circuit promulgated a bright line rule: "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Grosjean*, 349 F.3d at 336;[3]  *see Corrigan*, 478 F.3d at 727 (holding that the *Grosjean* court set forth a bright line rule).

The rationale is simple: "the prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *O'Connor*, 517 U.S. at 312.  This "inference cannot be drawn from the replacement of one worker with another worker insignificantly younger."  *Id*. at 313.  Defendant replaced Plaintiff, 59, with Scholl, 55.  An age difference of four years is insignificant under the *Grosjean* rule. Ultimately, this is fatal to Plaintiff's prima facie claim of age discrimination.

Even assuming, arguendo, that Defendant eliminated her position in the context of an RIF, Plaintiff would be unable to satisfy the prima facie elements of an age discrimination claim. In the RIF context, the fourth prong of the prima facie case is modified.  Rather than showing

---

[3]*See Grosjean*, 349 F.3d at 336-339, for an exhaustive list of precedent from the Sixth Circuit and beyond detailing the age difference between the plaintiff and the replacement sufficient to meet the prima facie case of age discrimination.

that her replacement was not significantly younger, Plaintiff must proffer "additional direct, circumstantial, or statistical evidence tending to indicate that employer singled out plaintiff for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465. This is a heightened standard, because the "mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination." *LaGrant v. Gulf and Western Mfg. Co.*, 748 F.2d 1087, 1090 (6th Cir. 1984).

Incorporating the analysis below, Plaintiff offers only weak circumstantial evidence of age discrimination, which is insufficiently "probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Barnes*, 896 F.2d at 1466. The fact that Plaintiff's ostensible replacement was only four years her junior is similarly lethal to Plaintiff's claims in the RIF context. Regardless of whether the Court analyzes Plaintiff's claim under the traditional elements or the heightened pleading standard in the RIF context, Plaintiff is unable to establish a prima facie case of age discrimination.

## B. PRETEXT

Even if the *Grosjean* rule did not dispose of Plaintiff's prima facie case, Plaintiff still would not survive summary judgment. Assuming, arguendo, that Plaintiff met her initial burden, under the *McDonnell Douglas* paradigm, the burden of production shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. *See McDonnell Douglas*, 411 U.S. at 795. Defendant easily meets this requirement.

Incident to Defendant's merger with CWS, the company abandoned MMS supply chain software and transitioned to INDUS/PassPort. Switching to a foreign and incompatible software rendered the skills of many of Defendant's IT employees, including Plaintiff, obsolete.

-8-

Defendant never disputed that Plaintiff was a valuable contributor or an able manager.  Rather, Defendant lamented that Plaintiff was a casualty of a harsh corporate sea change.  Faced with a surplus of IT managers, Defendant terminated Plaintiff because she was less familiar with INDUS/PassPort than Scholl.  This legitimate, non-discriminatory justification is sufficient to satisfy the second prong of the *McDonnell Douglas* paradigm.

Accordingly, the burden of production shifts back to Plaintiff to prove, by a preponderance of the evidence, that Defendant's professed reason was merely a pretext to mask a discriminatory animus.  *See Rowan*, 360 F.3d at 550.  Plaintiff may establish pretext by showing that Defendant's professed reason: (1) has no basis in fact; (2) did not actually motivate Plaintiff's termination; or (3) was insufficient to warrant Plaintiff's termination.  *Manzer*, 29 F.3d at 1084.  Plaintiff contends that she satisfies either of the first two criteria for showing pretext under *Manzer*.

### 1.  Defendant's Proffered Reason Has No Basis in Fact

Attacking Defendant's professed motivation, Plaintiff insists that she was more familiar with INDUS/PassPort than Scholl.  Accordingly, Plaintiff contends that Defendant must have taken her age into consideration when terminating her.  But Plaintiff misconstrues the legal standard.  Under the first *Manzer* criteria, Plaintiff must put forth "evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are 'factually' false.'"  *Id*.  Plaintiff must show "more than a [mere] dispute over the facts upon which the discharge was based."  *Bratihwaite v. The Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).  Rather, Plaintiff's burden is onerous because she must proffer sufficient circumstantial evidence that Defendant did not "honestly believe in the given reason for Plaintiff's termination."  *Abdulnour v. Campbell*

*Soup Supply Co.*, - - F.3d - -, 2007 WL 2710835, at *5 (6th Cir. 2007).

Plaintiff cannot establish that Defendant's professed reason for terminating her was pretextual "simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1107 (6th Cir. 2001). After all, a jury "may not reject an employer's explanation unless there is a sufficient basis in the evidence for doing so, because such a rejection would impermissibly shift the burden of persuasion from the plaintiff to the defendant." *Abdulnuour*, - - F.3d - -, 2007 WL 2710835 at *5. To survive summary judgment, Plaintiff must proffer "sufficient evidence from which the jury may reasonably *reject* the employer's explanation." *Manzer*, 29 F.3d at 1083 (emphasis added). In deciphering whether Defendant had an "honest belief" in the proffered basis for discharge, the Court examines whether Defendant reasonably relied on the particularized facts available to the company in firing Plaintiff. *Braithwaite*, 258 F.3d at 494.

Plaintiff asserts that Defendant could not have maintained an honest belief that Scholl was more familiar with INDUS/PassPort than Plaintiff. She insists that Scholl was incompetent and lazy. But Plaintiff's own assessment of Scholl's talents belies this argument. When Plaintiff supervised Scholl in 2002, she gave him a highly complimentary evaluation, rating Scholl as "competent plus." By contrast, Plaintiff's supervisor rated her as merely "competent." Plaintiff had such confidence in Scholl's abilities that she assigned him to a position of leadership on the team integrating INDUS/PassPort into AEP's supply chain management system. Despite these accolades, Plaintiff now asserts that Scholl was an inept employee who knew relatively little about INDUS/PassPort. Plaintiff claims that she lied about his ability in her evaluations out of sympathy, because she feared that Scholl was on the verge of termination. But despite Plaintiff's

-10-

self-serving change of heart, Defendant could have reasonably relied on Plaintiff's sterling reviews of Scholl's performance in promoting him to her position.

Moreover, Plaintiff's endorsement allowed Scholl to transfer from her group, which was primarily responsible for peripheral supply chain applications such as MMS, to the INDUS/PassPort group. As a result, in the year preceding Plaintiff's termination, Scholl worked much more intimately with the INDUS/PassPort program than Plaintiff. Accordingly, Defendant could have reasonably believed that Scholl was more familiar with Indus/PassPort. Since Plaintiff has not proffered sufficient evidence for a reasonable jury to conclude that Defendant's professed reason had no basis in fact, she fails to show pretext under the first *Manzer* criteria.

2. Defendant's Proffered Reason Did Not Actually Motivate Plaintiff's Termination

Plaintiff also argues that Defendant terminated her on account of her age and not for her relative unfamiliarity with INDUS/PassPort. Under the second *Manzer* criteria, Plaintiff may establish a pretext by showing that it was "more likely than not" that Defendant terminated her based on a discriminatory criterion. *Manzer*, 29 F.3d at 1084. Plaintiff must show "that the sheer weight of circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id*. In this case, Plaintiff's circumstantial evidence of age discrimination fails to meet this burden, especially considering that Plaintiff's replacement was only four years her junior.

*a. The Briefing*

According to Plaintiff, Defendant's attorneys implicitly instructed IT management to discriminate against employees over the age of forty when making personnel decisions. Plaintiff paraphrased corporate counsels' instructions as follows:

    i.      To ensure that security immediately escorted terminated employees from the building to prevent them from complaining of discriminatory treatment to human resources.

    ii.     To refrain from mentioning an employee's age as a reason for discharge. Instead, management was to profess a non-discriminatory motive.

    iii.    To file negative performance reviews and complaints against employees in order to build a record to support their subsequent dismissal.

But Plaintiff's version of the briefing is unreliable. She admits that she was not punctual to the meeting. As a result, she concedes to missing the introduction and to hearing the attorneys' remarks out of context. Plaintiff also admits that she did not talk during the meeting, challenge the presenters, file a complaint with Defendant's anonymous complaint reporting system afterwards, or present a corroborating account from any other employee in attendance.

Plaintiff interpreted these instructions, admittedly out of context, as a green light to fire older employees. While the attorneys used age discrimination as an example to illustrate both the appropriate and inappropriate procedure for terminating employees, there is insufficient evidence that the attorneys' statements constituted a directive to discriminate on the basis of age; especially considering that many of the briefing's participants were over fifty years of age. Ultimately, Plaintiff's account of the briefing is insufficient to create a triable issue of fact.

### B. Valvona's Statements

Plaintiff also alleges that Valvona, her former supervisor, made discriminatory remarks about her age on three separate occasions. First, Plaintiff alleges that Valvona inquired about her daughter, including her daughter's place of employment, her daughter's age, and the strength of Plaintiff's relationship with her daughter. Second, Plaintiff alleges that Valvona asked Plaintiff about her age and then expressed admiration for Plaintiff's ability to maintain a rigorous travel schedule and significant responsibility. Third, Plaintiff claims that Valvona asked her about her

retirement date.

Notably, none of Valvona's comments is facially discriminatory. Further, Plaintiff proffers no contextual evidence from which to infer a discriminatory animus. Valvona's questions about Plaintiff's daughter do not refer to Plaintiff's age and are therefore irrelevant to this inquiry. Valvona's comment about Plaintiff's work ethic could easily have been a compliment. Alternatively, if Valvona's remarks were sarcastic, they could certainly have been insulting or improper. But Plaintiff provides no contextual evidence to support this conclusion. Similarly, a question about retirement, alone, is insufficient to raise the specter of age discrimination. Without more, the Court declines Plaintiff's invitation to contort commonplace platitudes into discriminatory machinations.

Significantly, Valvona had no input into Otey's decision to terminate Plaintiff. Valvona was not even working for Defendant at the time. The Sixth Circuit has repeatedly held that "stray remarks, particularly those made by a person other than a decision-maker, are not enough to show discrimination." *Suits v. The Heil Co.*, 192 F. App'x. 399, 407 (6th Cir. 2006); *see also Shefferly v. Health Alliance Plan of Michigan*, 94 F. App'x. 275, 281 (6th Cir. 2004). Valvona's remarks are therefore insufficient to show that Defendant's professed reason for terminating Plaintiff was pretextual.

### C. Statistical Evidence

Finally, Plaintiff proffers statistical evidence of age discrimination compiled by a disgruntled former AEP employee whom Defendant also terminated. Plaintiff contends that the data shows a pattern of age discrimination following the merger. But it is well settled that a party opposing a motion for summary judgment "cannot use hearsay or other inadmissible

-13-

evidence to create a genuine issue of material fact." *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (*citing Weberg v. Franks*, 229 F.3d 514, 526 n. 13 (6th Cir. 2000) (Court disregarded many of the plaintiff's allegations because they were based upon hearsay rather than personal knowledge)).  Federal Rule of Civil Procedure 56(e) requires that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Although Plaintiff attaches the chart to her affidavit, she concedes that she has no personal knowledge of the accuracy of the data, the origin of the information, or the reliability of the statistical analysis.  Rather, Plaintiff's former colleague, who is not certified as an expert witness, compiled and analyzed the statistics.  As such, Plaintiff's proffered statistical evidence is inadmissible hearsay and does not merit further discussion.  As there is ample evidence to support Defendant's decision, and Plaintiff fails to show a discriminatory animus, summary judgment for Defendant is appropriate.  *See Reeves*, 530 U.S. at 147.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment with respect to all of Plaintiff's claims.  This case is DISMISSED.

**IT IS SO ORDERED.**


   s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: November 14, 2007**